UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RICHARD J. HEATH,

                Plaintiff,

    -v-                                                  6:14-CV-1188

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

RICHARD J. HEATH
Plaintiff, Pro Se
700 Court Street #2
Utica, NY 13502

OFFICE OF REGIONAL GENERAL COUNSEL    PETER W. JEWETT, ESQ.
   SOCIAL SECURITY ADMINISTRATION
   REGION II
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

      Plaintiff Richard John Heath ("Heath" or "plaintiff") brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of defendant Commissioner of Social Security's ("Commissioner" or "defendant") final decision denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Defendant

has filed a brief as well as the Administrative Record on Appeal. For reasons discussed in greater detail below, the matter will be considered on the basis of these submissions and without oral argument.

## II. **BACKGROUND**

On April 12, 2011, Heath filed applications for SSI and DIB claiming a period of disability beginning on March 31, 2010. R. at 122-41.[1] Plaintiff's consolidated application was initially denied on September 19, 2011, id. at 54-57, and again upon reconsideration on January 10, 2012. Id. at 58-61. At plaintiff's request, a hearing was held before Administrative Law Judge ("ALJ") Barry Ryan on April 25, 2013. Id. at 25-53. Plaintiff, represented by an attorney, appeared and testified. Id.

On June 4, 2013, the ALJ rendered a written decision concluding that Heath was not disabled within the meaning of the Social Security Act (the "Act") from March 31, 2010 through the date of his decision. R. at 9-18. Plaintiff timely appealed this unfavorable disability determination to the Appeals Council. Id. at 5.

On September 9, 2014, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Heath's request for review. R. at 1-3. Plaintiff filed this action on September 29, 2014, seeking judicial review of the Commissioner's denial of benefits. Because the parties are familiar with the underlying facts, they are discussed only to the extent necessary to address plaintiff's appeal.

---

[1] Citations to "R." refer to the Administrative Record.

- 2 -

## III. **DISCUSSION**

### A. **Standard of Review**

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. See id. Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986

(2d Cir. 1987)).

## B. Disability Determination—The Five-Step Evaluation Process

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical

- 4 -

evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). Id. §§ 404.1520(d), 416.920(d); see also id. Pt. 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to these first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five. Perez, 77 F.3d at 46. This step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

### C. Plaintiff's Appeal

Pursuant to General Order No. 18 of the Northern District of New York, consideration

of appeals from the Commissioner's final decision denying benefits, such as the one made by Heath here, ordinarily proceed according to a straightforward timeline, with plaintiff responsible for identifying the Commissioner's alleged errors in a legal brief filed within forty-five days of defendant's filing of an answer.  See General Order No. 18 (requiring plaintiff to "serve and file a brief setting forth all errors which plaintiff contends entitle [him] to relief" within forty-five days of the filing of the answer).

Here, however, Heath requested, and was granted, an additional thirty days in which to file his brief.  ECF Nos. 15-16.  An amended briefing schedule issued by U.S. Magistrate Judge Christian F. Hummel revised the deadline applicable to plaintiff to April 2, 2015.

Heath then failed to comply with this new briefing schedule.  On April 16, 2015, Judge Hummel issued an order warning plaintiff of the consequences of his inaction, noting that a properly filed brief would be plaintiff's only opportunity to identify the alleged errors made by the Commissioner.  ECF No. 17.  In light of plaintiff's failure, Judge Hummel directed defendant to file a brief defending the ALJ's decision by May 8, 2015.  The Commissioner timely complied with Judge Hummel's order.  Yet to date, plaintiff has neither requested a second extension of time nor filed the required brief in this matter.

Where, as here, a plaintiff is proceeding pro se on an appeal from the Commissioner's denial of disability benefits, "General Order No. 18's promise of a consideration of the merits complies with the special solicitude that the Second Circuit mandates for pro se litigants."  Vaughn v. Colvin, –F. Supp. 3d–, 2015 WL 4528458, at *3 (N.D.N.Y. July 24, 2015) (Young, J.) (citation omitted).

"Accordingly, even when the plaintiff fails to file a brief, courts still ought examine[ ] the record to determine whether the [hearing officer] applied the correct legal standards and

reached a decision based on substantial evidence." Vaughn, 2015 WL 4528458, at *3 (alterations in original) (citation and internal quotation marks omitted).

### 1. Step One: Substantial Gainful Activity

The ALJ found Heath had not engaged in substantial gainful activity since March 31, 2010, the alleged onset date. R. at 11. There is no error in the ALJ's determination at this step.

### 2. Step Two: Severe Impairments

At Step Two, the ALJ found that Heath's left wrist fracture and right hand injury were severe impairments. R. at 12. However, the ALJ concluded that plaintiff's depression was not a severe impairment. Id.

In support of his non-severity determination, the ALJ noted that a consultative psychiatric evaluation conducted in August 2011 by Elena Bloodgood, Psy. D., revealed that Heath had never been involved in any treatment or taken any medication for his alleged mental health problems. R. at 12. Further, the ALJ recounted that, in Dr. Bloodgood's opinion, there was no evidence of any ongoing substance abuse. Id. Finally, the ALJ noted that examinations of plaintiff occurring in May 2011 and December 2012 continued to reflect non-existent, or at best extremely limited, findings with respect to any mental health issues. Id. Because the ALJ supported his non-severity finding with this substantial evidence in the record, there is no error at this step.

### 3. Step Three: The Listed Impairments

At Step Three, the ALJ determined that Heath's combination of severe impairments did not meet or equal any of the Listings. R. at 12-13. As relevant here, the ALJ considered Listing 1.02B (major dysfunction of a joint), which is characterized by "gross anatomical

deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion" coupled with "[i]nvolvement of one major peripheral joint in each upper extremity . . . , resulting in inability to perform fine and gross movements effectively." Id. at 13.

The ALJ concluded Heath did not meet this Listing because "the record does not show that the claimant's upper extremity disorders result in inability to perform fine and gross movements effectively." R. at 13. The Regulations define the inability to perform fine and gross movements as:

> [A]n impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. To use their upper extremities effectively, individuals must be capable of sustaining such functions as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living. Therefore, examples of inability to perform fine and gross movements effectively include, but are not limited to, the inability to prepare a simple meal and feed oneself, the inability to take care of personal hygiene, the inability to sort and handle papers or files, and the inability to place files in a file cabinet at or above waist level.

Murray v. Comm'r of Soc. Sec., 2014 WL 4199725, at *13 (E.D.N.Y. Aug. 21, 2014) (citing 20 C.F.R., Pt. 404, Subpart P, App. 1, § 1.00(b)(2)(c)). Notably, the ALJ cited to plaintiff's self-reports reflecting that he is able to perform precisely the sorts of activities that tend to establish a claimant can use his upper extremities effectively, such as reaching, pushing, pulling, grasping, and fingering to be able to carry out activities of daily living, albeit with some level of increased difficulty. R. at 13 (citing R. at 188-89, 310). Because the ALJ supported his determination regarding the Listings with substantial evidence in the record, there is no error at this step.

### 4. **RFC Assessment**

The ALJ determined Heath retained the RFC to perform medium work, which "involves

lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c). In making this determination, the ALJ accorded "great weight" to Woodrow Wilson, M.D., a consultative examiner who met with plaintiff on August 19, 2011. R. at 295-303. Importantly, Dr. Wilson opined that plaintiff would be able to either "frequently" or "continuously" utilize both his right and left hand to reach, handle, finger, feel, push, and pull. Id. at 299-300. The ALJ's written decision notes that the opinions of both Reeta Misra, M.D., and Frank Pennington, M.D., two state agency medical consultants who reviewed plaintiff's records in September 2011 and January 2012, respectively, were consistent with Dr. Wilson's limited findings. Id. at 15.

As part of this RFC assessment, an ALJ "must evaluate the intensity and persistence of those symptoms considering all of the available evidence; and, to the extent that the claimant's pain contentions are not substantiated by the objective medical evidence, the [hearing officer] must engage in a credibility inquiry[.]" Vaughn, 2015 WL 4528458, at *6 (citation omitted).

The ALJ engaged in that inquiry here. Among other things, the ALJ noted that Heath was able to return to substantial gainful activity that required extensive use of his dominant right hand following the 1996 injury of which he complains. R. at 16. The ALJ also found that plaintiff treats his pain with only over-the-counter medications, "which is not particularly indicative of disabling pain." Id. Further, and most tellingly, the ALJ noted that plaintiff repeatedly "testified that he would be able to return to his previous position" of employment, and that the reason he was currently out of work was not due to disabling pain but rather because he was currently "unable to find these positions." Id. Accordingly, the RFC assessment will be confirmed.

### 5. Step Four: Past Relevant Work

After determining Heath's RFC, the ALJ concluded at Step Four that plaintiff had no past relevant work, finding "that it is not clear whether [plaintiff's] past work activity has been sustained long enough and performed at levels of substantial gainful activity to constitute past relevant work." R. at 17. Therefore, the ALJ proceeded to step five of the sequential evaluation.

### 6. Step Five: Future Work

At Step Five, the ALJ considered Heath's age, education, and work experience before concluding that jobs existed in significant numbers in the national economy that plaintiff could perform. R. at 17. On this basis, ALJ concluded plaintiff was not disabled within the meaning of the Act. Id.

In making this determination, the ALJ referred to the Medical-Vocational Guidelines, which are used in "cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work." 20 C.F.R. Part 404, Subpart P, App. 2, § 200(a).

Under these Guidelines, if a claimant is able to perform all or substantially all of the exertional demands at the level of exertion in question, such as medium work, then a conclusion of "disabled" or "not disabled" will be directed depending upon the claimant's specific vocational profile. SSR 83-11.

In this case, the ALJ noted that "medium work" requires "use of arms and hands to grasp, hold, and turn objects, [but it] generally do[es] not require precise use of the fingers as

well as use of the hands and arms that is required in much of sedentary work." R. at 18 (citing SSR 83-10). The ALJ then reiterated his earlier findings—that plaintiff is still able to make good use of both his left and right hand, despite his prior injuries. Id. On this basis, the ALJ concluded that plaintiff's manipulative limitations "have little or no effect on the occupational base of unskilled medium work" and plaintiff was therefore "not disabled." Id.

An independent review of the relevant Social Security Ruling confirms that the ALJ's prior factual determinations regarding Heath's manipulative limitations comports with the more forgiving requirements of "medium work" as that term is defined in the Regulations. See SSR 83-10 ("Use of the arms and hands is necessary to grasp, hold, and turn objects, *as opposed to the finer activities in much sedentary work*, which require precision use of the fingers as well as use of the hands and arms." (emphasis added)). Accordingly, the ALJ did not err at Step Five.

## IV. **CONCLUSION**

After an independent review of the record and the filings in this matter, it is clear that the ALJ applied the correct legal standards and his decision is supported by substantial evidence.

Therefore, it is

ORDERED that

1. Heath's motion for judgment on the pleadings is DENIED;

2. The Commissioner's motion for judgment on the pleadings is GRANTED;

3. The Commissioner's decision is AFFIRMED; and

4. Plaintiff's complaint is DISMISSED.

IT IS SO ORDERED.

- 11 -

_____
United States District Judge

Dated: November 20, 2015
       Utica, New York.